Good morning. My name is Alan Maggetheim and I represent the defendants in the underlying case, appellants at this level. This is a case involving a group of family members, brothers who formed a band in the late 70s and they're involved in the Norteño music industry. In about 1982, they had need for a drummer. The previous drummer, not a brother, was not a member of any partnership. He would simply work for hire and play the drums. When he left, Mr. Lopez was given one year as an opportunity to see if he would like the band and the band would like him so that he could be a drummer and replace the former employee. And consequently, that year came and went. He remained as an employee of the band for some 15 years. He didn't question the fact that he was getting paid, that at times he received bonuses, that at times he lived with the Garcia family, etc. And then about five years before he filed suit, he said he became concerned about what his true relationship was with the band. And at that point, he took no further action and subsequently in 2001, he was terminated from the group. And in 2003, he filed a lawsuit for approximately 10 or 11 claims that he brought forward, a number of state claims and a number of Federal claims. Summary judgment was granted by the late Judge Rohl. I'm sorry. So we're just hearing on Justin Richman. We are hearing on Justin Richman and the attorney fee issue. That is correct. And that being the point, well Why is it always the drummer? You know, no, no, I know. And I have an expression that sometimes you should feel good to be Ringo because you don't get all the pressure. That's right. But other things come along with that. I understand. The important point is, as you can see from the record, is Mr. Lopez's picture was on some albums. Mr. Lopez was in fact played the drums and recorded on some of the albums, but not all of the albums. And what's important about that is they did have claims, Federal claims, copyright. His name was even listed on an early copyright form that was sent into the government, which my client said was a mistake. That was many, many years ago. And the copyright claim was abandoned, as well as all other Federal claims which were capitulated. And then we went to trial, as the judges know, on the fact that in the end, they believed he was a partner. Jury found no partnership. Jury found no breach of any agreement. The jury found no breach of fiduciary duty, which is critical in my estimate for the following reason. By finding no breach of fiduciary duty, they either found that there was no special relationship between the band members and Mr. Lopez that required them to do anything more for him. Or they found that he did not breach any special relationship, which as a result didn't change the relationship where they would have owed him any additional sums, which would, of course, under unjust enrichment, would go to the fact that there was legal justification. The more important point is under unjust enrichment, unjust enrichment, under Arizona law, there must be no adequate remedy at law. And this is not the case. And Judge Rohl and I argued this, and at first he said he might not submit it, and then the next morning he said that he decided that he would. What's important about that is, is when it was submitted, what we do know is this. Take away the other claims that we prevailed on, and what you look to is you look to the fact that they had adequate remedies at law to protect his likeness, to protect the copyright if he was entitled to it. These matters, Lanham Act claim, these matters were never adjudicated. They chose to go a different route. They capitulated. And there were no findings against them. In fact, there's no indication in the record that those claims were dismissed without prejudice. It was simply just dismissed, I agreed to it, and we were left with the remaining claims. I moved for a directed verdict at the close of the plaintiff's evidence. Judge Rohl denied it. Afterwards, I renewed, you know, I had a JNOV and renewed my motions as often as possible so as to protect the record, which sometimes I do a little too often. But the important thing is this, that when you look at the standards and you look at the applicable case law, the Trustmark case is the one that I believe controls. We've cited it in our brief. And what's important about the Trustmark case is in that case, the plaintiff, in that matter, decided not to pursue a breach of contract claim out of concern that the measure of damages would not be as good as other claims, including unjust enrichment. And what was found in that case was that unjust enrichment was not proper. In fact, in that case, the judge did not allow unjust enrichment. It was sustained on appeal. And why that's important is, is because in that opinion, it distinguishes between adequate remedies that law pursued and not pursued. And so you cannot lay behind the law and hold back claims either because you don't like the way the evidence went or because the measure of damages isn't sufficient or you have questions about the jury. I don't know which of those they were, but as you – part of the attorney fee argument is the fact that they had a lawyer who came in who was schooled in entertainment law and trademark and copyright. They made a conscious decision to abandon those claims. And in Trademark, it talks about the fact that when a party capitulates a claim and avoids remedies that existed at law, that unjust enrichment will not lie. Are copyright and Lanham Act the only two remedies at law that you're relying on? No. Not at all, Judge. They nonsuited the following. Breach of good – breach of good faith and fair dealing. Promissory estoppel. Invasion of right of privacy. Rescission. Constructive trademark. Reverse passing off under the Lanham Act. So if they prevail, he could have been an owner of the copyright, present and future. Right. But my guess is that they're going to say these are concentric circles and unjust enrichment is a wider circle than the damages available for copyright, for partnership, for breach of the covenant of fair deal – good faith and fair dealing. So what's your response to that? My response to that is I'm sure they will say that, and they cannot square themselves with the Trustmark case, because the Trustmark case is exactly on point, where, in fact, in that case, a decision was made not to pursue claims that existed because they didn't like the potential damages that they would have or could have recovered, and that it was – Trustmark is not seeking, on page 10 of the opinion, is not seeking to pursue its unjust enrichment claim in the alternative. Rather, it seeks to avoid possible contractual limitations on its recovery by resorting to an unjust enrichment cause of action. That's exactly what we have here. They believe that this man was a partner. They believe that he was going to be a one-fifth owner. His likeness was used. His name was on a copyright. And then it's easy to say, well, wait a minute. So what is he really owed? They tried that case. And by abandoning those claims, we will never know. But they cannot do that and then seek unjust enrichment. It's exactly what the Trustmark case speaks to. If you believe that, in fact, you're making a damaged decision. The other way of looking at it is they thought they – there was no adequate remedy because those theories were legally flawed, with which I gather you agree. You did move for – you thought – you moved for summary judgment. You moved for judgment of the matter of law. You believed – and not to hold you to that, but, I mean, that's the issue, is that you believe that they were legally flawed theories. How do you believe the unjust enrichment theory was flawed? I can address that in two ways. One, I believe that they were factually flawed and not necessarily legally flawed. My point is it would have been a decision for the jury to decide. I – I – I zealously represented my client and moved – Sure. I would have moved for verdict. And instead, they – they non-suited those claims without prejudice. So there's no determination. We really don't know what would have happened. Well, we do know that the jury found no contract. We do know that the jury found no partnership. Right. That's correct. So doesn't that support an argument that the flaws in the other claims that you've identified might also have been flawed? Not necessarily, because they are independent claims. You don't have to be a partnership to have a copyright interest. You don't have to be part of a – you don't have to be part of a partnership to be able to complain that your likeness was used or misused. So not at all. What about good faith and fair dealing? Well, that's interesting, because in terms of good faith and fair dealing, I will acknowledge that of those other claims, that probably was their weakest. But in the end, I thought all their claims were weak, and I came pretty close to establishing that, you know, not by myself, but obviously with – with the evidence in the jury. My point is, we can go round and round, but when you look at the elements of unjust enrichment in particular, whether or not there was no justification for any conduct of my client, and you look to the findings of the jury on the cases that – on the claims that were submitted, you find that in the end, they put him back by their claim that he was always contended, an employee. Consequently, he would then have had to have sought damages to show what he didn't receive as an employee, meaning he had no greater rights. If I concede what I've been asked, which is all those other claims were flawed, well, then he had no right to benefit because they used his likeness. He had no right – he had no right to benefit because there may have been a glitch on the copyright paperwork. So consequently, on what basis, even if appropriately submitted, would a jury award for unjust enrichment, where either by dismissal or jury finding, there was no evidence and no conclusion at any level that he was anything more than an employee, and he never disputed that he received all his compensation? You're down to about two and a half minutes. So I think we have – either you want to reserve or you want to deal with some other issues, please. I will do both. And I will quickly just state that it's a consolidated appeal on an attorney fee issue where there was an – where there was a services agreement for contingent fee, and most importantly, and in the Builder's case, which I'll come back later and talk about a little bit more, it specifically says that under Arizona law, if it's not as a result of prevailing by virtue of a contract and only on an equity claim, you do not get attorney's fees and you should not allow for double recovery where there is an agreement for attorney's fees. That actually supersedes the Arizona statute. And that – we raise that, and obviously, Judge Rohl rejected that. Thank you. May it please the Court, I'm John Battle, representing the affilee, Alejandra Lopez. Our position is that the record supports the jury verdict, that the verdict is supported by substantial evidence, and the district court's position is that the record should be affirmed. The key evidence in this case was the contract. And it's true that the jury found there was no contract between the Garcia brothers on the one hand and him on the other hand, and Lopez on the other hand. But the entire case arose out of a number of contracts, which, in fact, could be viewed as a single contract, the so-called UNICO agreement. And those documents, those agreements are Exhibits 1 through 7 in the extracts provided by the affilee, the ASER, the affilee's supplemental extracts. Those are all contracts between a record company, UNICO Records, and a band comprised of five individuals, the four Garcia brothers and Mr. Lopez. And so the parties there are the recording company and the five individuals. UNICO later morphed into Fonavisa. Some of the later agreements are with Fonavisa. But it involved five band members who were personally, individually signatories to that agreement, but who had no contract among themselves. And in those contracts, the Garcias and Lopez all signed. They asserted ownership of the music that was already recorded. They agreed to produce new music. And the basic deal was that UNICO would exploit the music work product that the five individuals produced and pay them money, as provided more fully in those detailed agreements. And over the 20 years the contracts extended, the record company paid more than $5.5 million to the band on account of that work product. And those dollars are stated in Exhibits 8 and 9 in Apolli's Supplemental Extract of Records, I think it's Volume 2. And the Garcias received all that money, that $5.5 million, and they paid none of it to Lopez. And again, those contracts are between the record company and the five artists. Now, how do we know how that money should have been split, as distinct from how it was split, which was it went to the four Garcia brothers? You know it first from the terms of the contracts themselves. And that's just very straightforward. On the face of the contracts, the five individuals are in an equal position. The second way we know it is that the jury heard expert testimony of custom and practice in the music industry. The music industry is a unique industry. It has special usages of trade, custom, and practice. And Lopez submitted expert testimony to clarify that. And this is the testimony of Jay Berger in the Supplemental Extracts of Records, Volume 1, Hab 5. And it's covered at considerable length. And I'll just simply summarize it. First of all, Mr. Berger distinguished between songwriters' royalties and royalties, on the other hand, royalties paid to artists who make sound recordings. And that's what we're dealing with here. There were five musicians playing together and producing sound recordings which were licensed to the Unico Record Company. The second big distinction that was explained by Mr. Berger was the distinction between featured artists and session musicians. And featured artists, and in fact Ringo Starr was one of the examples that was referred to in the testimony, a featured artist, somebody who is identified as being a member of the band, someone whose identity, if you will, is part of the overall group in the public consciousness, and who, of course, contributes integrally to the artistic process. The featured artist was distinguished from the session musician. And the session player shows up. And the session player has a contract that pays him union scale. And he comes and he plays the guitar or the drums for an afternoon and he goes home. And he doesn't participate in the royalties from the band. The expert Mr. Berger talked about featured artists as being a royalty-bearing artist because he's one of the people who produces the sound recording that generates the royalties. And Mr. Berger gave the opinion, his opinion, that Mr. Lopez was a featured artist and a royalty-bearing artist. And the royalty-bearing artists split equally. That's how the split is made. And there was ample testimony of this. So why isn't this a case that ought to be governed by general contract and royalty law as opposed to unjust enrichment? It's not governed by... The answer is the problem wasn't that Unico didn't pay money to the group. The problem was that Lopez did not receive his share of the money from the Garcias. And there was no contract that obligated the Garcias to pay Lopez his share of the money. But they were unjustly enriched because they retained his share of money. The enrichment is the money that flowed out of the contract. The unjust enrichment is the component of that total that the Garcias kept. The impoverishment is... And I'm walking through the instruction to that effect. The impoverishment is that Lopez didn't get the money. The connection is that they kept it. And the lack of justification, the injustice, is that they had no contract that entitled them to keep the money. And the other part of it, which Mr. Magenheim alluded to, is that there was no adequate remedy at law. There was none. The unjust enrichment was the only claim that could be used. Was that because the contract claim failed? Pardon? Was that because the breach of contract claim failed? The breach of contract, I think, related to the partnership side of the case. And since there was no partnership relationship proven, there was no partnership contract that obligated the payment. So in your estimation, are we not talking about what I said were concentric circles, but actually separate circles or maybe a Venn diagram of some type? Is that what you're saying in terms of damages? The Venn diagram is that there's a more expansive circle based on unjust enrichment, because you can have a variety of circumstances which generate the failure of one person who contributes the benefit to receive compensation for it. I don't know if that's the appropriate analogy. Well, I guess the question is, you know, you were intimately familiar with the case, the jury, and how it went. Why do you think the jury rejected the contract theories and other theories and relied on unjust enrichment? Do you see any contradiction? It may be that they simply couldn't agree on what the relationship was, and there was a feeling. I mean, the jury is a black box, and it's hard for me to try and deconstruct the way they could have and should have analyzed it. But I think the basic point is, and not to dodge it, is that there was substantial evidence that supported unjust enrichment, and you can't know how they dealt with the might of Venns on that claim. I wish I could give you a better answer, but I think there's the bottom line is there's substantial evidence that supports the verdict. But to ask about the potential inconsistency in a slightly different way on the accounting remedy that was part of what was provided, is there a requirement under Arizona law that there be a mutual and confidential relationship to support accounting? And if there's no partnership, what is the basis of that finding? Oh, I think it's a simple understanding of the business relationship that was there, which is that as to the group of five musicians, Rocky Garcia was the, if you will, the manager of the band. Mrs. Garcia did the financial and accounting side of it. And to the extent Lopez had any right to receive money from the joint work product, they were the ones who controlled it and had to account for it. That's, you know, it could be any kind of business relationship that involves a joint work effort and a split of the resulting money. So the only duty that gives rise to the accounting remedy is the fact that they got the money. I think that's a first statement. Well, not only that they got the money, but that they controlled the money. They had the power to divide the money, and they should have divided it five ways and they divided it four ways or kept it themselves. I'm not. But the duty to provide a certain amount of it to him is not a contractual duty. I think that's right. It's not a contractual duty. It's not a contractual duty. It's not a partnership-based duty. It's an equitable duty. Based on unjust enrichment? I think that's right. So it all comes back to the absence of the partnership as the legal remedy. I'm sorry. As opposed to the – I think that's correct. It's an equitable duty. The Arizona cases are practical and broad-ranging as far as what constitutes unjust enrichment. The Pelletier case, the ASH case, which are really cited more in the attorney's fees context, but – and then the cases of Trestmark and the others. I think those cases are very expansive in terms of if there's a benefit and somebody receives something they're not entitled to, the court will make them pay it over. So you heard the – you heard your opponent's argument this morning. You want to address the adequate remedy of law issue? I mean, it seems to me if you prevail on your partnership and contract claims, you'd receive the same damages. Well, but we didn't prevail on partnership and contract claims because the jury didn't go that way. But the jury had the power to find – to select from among those three theories, and it shows this one, and there's substantial evidence to support it. No, I don't – I take your point on that. But I – I suppose the question is under Arizona law, what does adequate remedy of law mean? Does it mean a successful remedy of law or the existence of a viable remedy that ultimately might not be successful? I think part of it is preventing a double recovery. I think part of it is – I think an adequate remedy of law is it goes to the issue of compensation. If it pays over the amount that the – of the unjust enrichment and corrects the problem, that's an adequate remedy. For various reasons, which we don't know, the jury decided they weren't partners, decided they didn't have a contract. Now, if you look at Mr. Lopez's case, there was no contract. Everyone testified there was no contract. Mr. Magenheim stated in essence that Mr. Lopez was an employee, but that's – that's never the way he testified. He just joined the band. What does that mean, joined the band? Could you have recovered on unjust enrichment had you never sued for breach of a partnership contract? I think you could have, but you're entitled to plead alternative theories and go out and – you know, when you file the complaints, you don't know how everything is going to shake out. The – I just want to make sure where I go in my last couple of minutes. How much – if I may, do I have two more minutes? Yes. Okay. On the attorneys' fees question, if I may ask why you're looking, is there a sufficient relationship to an underlying contract to allow attorneys' fees to stand under Arizona law? I submit, Your Honor, that there is. the cases under ARS 12-340-101 have a very expansive view of what constitutes the arising out-of-contract element of the statute. And in this case, we've got 20 years' worth of contracts. And we – money that was paid out of those contracts to the band, and that was the musicians instead of the five. So somewhere in my voluminous array of materials, I have a couple of notes on that precise element arising out-of-contract. But it's not essential that there be a contract between Lopez and the Garcias. The jury found that there wasn't one, but the money flowed from the contract. And it was – overall, it's a commercial case. It involves contractual fees. It involves rights and duties relating to the source of the money, the revenues paid by the record company to the band. And for that reason – okay. And for that reason, I submit there is an adequate contractual relationship with ARS-12. There's an adequate contract arising out-of-contract situation within terms of the State statute. Your time has expired, but if you have a closing thought, we'll enter it. We'll hear it. I'd submit that the verdict was supported by substantial evidence. The Court's legal rulings were correct, and the judgment should be affirmed. Thank you. Thank you, counsel. Mr. Battle? Yes. On the attorneys' fees issue, this is kind of where we left off with Mr. Battle, AA Builders v. Grand State Construction, which we cited in our brief, states on page 3, statute providing for attorneys' fees that arose out of express – I think  It says that the State statute provides in as much as the promissory estoppel claim provided an equitable remedy that was not a theory of contract liability. It is clear and unequivocal that contractual dealings or the existence of contracts regardless of discussions or even the existence of an underlying contract, that if your recovery is based upon an equitable theory, you do not receive attorneys' fees. With regard, quickly, I've got to reiterate that when Mr. Battle talks about Mr. Berger's why Mr. Lopez was a featured artist, and he was specifically asked questions and addressed the Federal claims that were live and viable at that time. And they abandoned those claims, and the case law says capitulation of claims for which you have an adequate remedy will not allow you to have a case that sounds an unjust enrichment. There was no special relationship found by the jury. Mr. Lopez worked for 20 years without ever complaining about his arrangement. It was never a meeting of the minds. And the mere fact that 20 years later he was dissatisfied with the method of compensation for which he never complained does not give him a right when the jury finds no partnership, no special relationship or a breach of a special relationship within a breach of a special relationship. So the Federal claims to which they might have had a recovery because his likeness was used and so forth, they abandoned. And the case law in Arizona makes it abundantly clear, capitulation equals no unjust enrichment because you had an adequate remedy at law. Thank you, counsel. Thank you for your time. The case just heard argued will be submitted for decision. Thank you both for your arguments and presentation.
judges: Rosenthal, Fletcher B. , Thomas